**IN THE COURT OF COMMON PLEAS FOR THE STATE OF DELAWARE
IN AND FOR KENT COUNTY**

JENNIFER A. LEIPOLD and ) 
DOUGLAS C. MANGELS , ) 
                                ) 
    Defendants-Below/Appellants, ) 
                                ) 
        v. )     C.A. No.: CPU4-13-000349
                                ) 
CARRIE HUBBELL MELGAREJO, ) 
                                ) 
    Plaintiff-Below/Appellee. )

Submitted: February 17, 2014
Decided: April 30, 2014

James J. Haley, Jr. Esq.                            Donald L. Gouge, Jr., Esq.
1716 Wawaset St.                                  800 N. King St., Suite 303
Wilmington, DE 19806                        Wilmington, DE 19801
*Attorney for*                                        *Attorney for*
*Defendants-Below/Appellants*              *Plaintiff-Below/Appellee*

## DECISION AFTER TRIAL

Defendants-Below/Appellants Jennifer A. Leipold and Douglas C. Mangels (collectively as "Tenants") bring this *de novo* appeal from the Justice of the Peace Court pursuant to *10 Del. C.* 9570, et seq. entered on January 15, 2013. In the complaint on appeal, filed on May 7, 2013, Plaintiff-Below/Appellee Carrie Hubbell Melgarejo ("Landlord") alleges that, pursuant to a written lease agreement between the parties, Tenants rented real property (the "Property") from Landlord.[1] Landlord

---

[1] The court docket shows that this matter was originally captioned as "Jennifer A. Leipold and Douglas Mangels v. Big Dog Properties, LLC." On February 12, 2014, the parties filed a stipulation to correct the caption of this matter as shown.

alleges that, due to actions of Tenants, the property sustained damages which required repairs beyond normal wear and tear. Landlord seeks damages in the amount $2,865.21.

Trial *de novo* was held on February 4, 2014. The Court heard testimony from four witnesses and documentary evidence was submitted by both parties.[2] At the conclusion of trial, the Court reserved decision and the parties were permitted to submit supplemental briefing. This is the Court's final decision after trial.

### FACTS

Tenants rented the Property from Landlord, pursuant to a written lease (the "Lease"), commencing on October 31, 2010. Landlord agreed to let Tenants terminate the Lease early, and Tenants vacated the premises on or around May 20, 2011.

At the trial on February 4, 2014, the Court heard testimony from four witnesses called by Landlord: Michael Henning, Dominique Frederique, Jennifer Leipold, and Robbin Hubbell-Kusami. Jennifer Leipold was the sole witness to testify for Tenants. Documentary evidence was submitted by both parties.[3] Michael Henning ("Mr. Henning") was the first witness to testify during Landlord's case-in-chief. Mr. Henning works in hardwood flooring, specializing in installation, refinishing, and repair. The second witness to testify was Dominique Frederique ("Mr. Frederique"), a licensed general contractor who performed work on the

---

[2] List evidence

[3] Plaintiff's exhibits 1 through 13 were received into evidence. Defendants' exhibits 1 through11 were received into evidence.

property after the Tenants vacated. Jennifer Leipold ("Ms. Leipold"), one of the two tenants and named defendant in this action, testified during Landlord's case-in-chief. Ms. Leipold was also the only witness to testify for the defense. Finally, Robin Hubbell-Kusami, co-owner of the property, testified on behalf of Landlord.

The testimony at the hearing indicates that during the tenancy, Tenants hung a number of items in the walls and ceilings of the property, despite a prohibition in the lease against placing nails or other fasteners in the walls. Tenants also replaced a shower rod in one of the bathrooms and took down cabinet doors in one of the bedrooms. At Tenants' request and with permission, the Landlord removed the existing washer and dryer so that Tenants could install their own washer and dryer. Tenants also attached plastic to the windows, secured by tape to minimize cold air draft.

December, 2010, Tenants had furniture delivered, and when the items were brought in the dwelling, it scratched and dented the hardwood floors on the stairs, on the second floor hallway and in the master bedroom.

After the Tenant vacated the property, the Landlord in June 2011 sent an itemized list of damages to Tenants to the property, which was allegedly caused by Tenants. Based upon this calculation, Landlord demands damages in the amount of $2,865.21.[4]

---

4 In the letter, Landlord listed the total cost of damages to the Property as $4,977.21. To reach the final outstanding balance of $2,865.21, Landlord subtracted from the total a rent credit of $462.00; a security deposit of $1,250.00, and a pet deposit of $400.00

Specifically, Landlord seeks to recover the following:

1. Outstanding Water Bill — $38.22, $32
2. Returned Check Fee — $45.00
3. Outstanding Mowing and Hauling — $65.00
4. Patch/repair nail and screw holes throughout house — $150.00
5. Repaint bathroom 2 door — $65.00
6. Repair water in kitchen corner — $0.00
7. Replace damaged screen door — $81.99
8. Reinstall mailbox — $15.00
9. Remove plastic on window frames/kitchen door — $0.00
10. Remove glue from window plastic and repaint — $630.00
11. Remove glue from door plastic and repaint — $65.00
12. Repaint nail damaged wall — $75.00
13. Remove water stains on heater register covers and repaint — $195.00
14. Repair dining room molding damage — $15.00
15. Repair and repaint kitchen ceiling — $170.00
16. Repair hole in solid surface kitchen counter — $150.00
17. Repair wall and floor damage from laundry room — $70.00
18. Install missing laundry room light bulb/fixture cover — $0.00
19. Reinstall hall light fixture cover — $0.00
20. Repair second floor hall wall and repaint — $175.00
21. Repair second floor hardwood floors — $1,900.00
22. Repair staircase and landing — $790.00
23. Repair bathroom 2 cabinet doors and built-in base — $250.00[5]

The amount which Landlord seeks of $2,865.21, is calculated to give a credit in the amount of $462.00; a security deposit in the amount of $1,250.00; and, a pet deposit in the amount of $400.00.

Tenants denied they damaged the property and takes the position that the alleged damage to the property, with the exception of scratches to the second floor hardwood floors, existed prior to their possession of the property or was the result of normal wear and tear. As to the alleged damage to the hardwood floors, Tenants

---

[5] Landlord originally sought to recover $32.00 for an estimated water bill, however, at trial Landlord stated that it was no longer pursuing that charge.

concede that certain scratches to the second floor hardwood occurred during their tenancy, however, Tenants maintain that such damage was covered by insurance.

## DISCUSSION

In a landlord-tenant action for damages, the burden is on the plaintiff to prove the alleged damages by a preponderance of the evidence.[6] To prevail on a claim for damages, the plaintiff must establish that the damages are beyond normal wear and tear.[7] Normal wear and tear consists of damage that may "be corrected by painting and ordinary cleaning."[8] If the landlord proves that damages could only be remedied by repairs above and beyond normal wear and tear, landlord can use the security deposit to cover the costs associated with repairs of such actual damages,[9] where it followed the statutory notice provisions in 25 *Del. C. § 5514*.

The Court will address in chronological order each item which Landlord seeks to recover. All relevant testimony will be discussed in the context of the listed item of damage. Those items for which Landlord seeks no monetary recovery are omitted as moot.

### 1.  Outstanding Water Bill    $38.22 and $32.00

The Lease required Tenants to pay any water charges in excess of the City of Wilmington's base price.[10]   Ms. Hubbell-Kusami testified that the City of Wilmington's base price is $80.48, and that water bills in excess of that amount

---

[6] *BRG, LLC v. Brinsfield*, 2010 WL 1413004, at *2 (Del. Com. Pl. March 4, 2010).
[7] *See Id.*
[8] 25 *Del. C.* § 5514(c)(1).
[9] *Id.*
[10] Pl.'s Ex. 4 at ¶ 12.

5

remain unpaid by Tenants, the sum of which totals $38.22 and $32.00. In support of its position, Landlord submitted two quarterly statements, both of which bore a balance of over $80.48.[11] Ms. Leipold, on the other hand, testified that she had no knowledge of any outstanding water bill, despite daily communication with Landlord.

The Court finds that Landlord has proven, by a preponderance of the evidence, that Tenants are responsible for the excess water bills in the amounts of $38.22 and $32.00 respectively.

### 2. Returned Check Fee $45.00

The Lease provides that a fee of $45.00 for each returned check.[12] Landlord contends that it is entitled to payment of $45.00 for a check from Tenants dated May 19, 2011, which was returned due to a stop payment. Ms. Leipold testified that, upon receiving notice that the bill the check was intended to cover remained outstanding, Tenants stopped payment on the check, notified Landlord of the stopped payment, and hand-delivered a check to Landlord's legal counsel.

The Court finds the testimony of Ms. Leipold to be credible. Landlord was on notice that payment on the check had been stopped, and a replacement check was provided. Thus, the Court finds that Landlord is not entitled to recover for the returned check fee of $45.00.

### 3. Outstanding Mowing and Hauling $65.00

---

[11] Pl.'s Ex. 8. The first quarterly statement, dated December 15, 2010, shows a balance of $93.22, which is $12.74 over the base price according to Landlord. The second quarterly statement, dated March 18, 2011, shows a balance of $105.96, which is $25.48 over the purported base price.
[12] Pl. Ex. 4 at ¶ 2.

Under the Lease, the Tenants were required to keep the grounds "in a reasonable and prudent manner" including "cutting the grass, [and] keeping the area free of litter and weeds."[13] Ms. Hubbell-Kusami testified that the grass was so high a ticket was issued. Landlord submitted into evidence copies of a check in the amount of $65.00 issued to Clean Slate for lawn services.[14] Tenants offered nothing to rebut the evidence of the damages incurred for lawn services.

The Court finds that Landlord has proven, by a preponderance of the evidence, that Landlord is entitled to recover the amount of $65.00 for lawn services.

### 4. Patch/repair nail and screw holes throughout house    $150.00

The Lease prohibited "placing any nails or other wall fasteners on the walls."[15] Ms. Leipold testified that Landlord explained that this provision did not apply to Tenants. Furthermore, Ms. Leipold testified that she did not further consider the prohibition against hanging items because she considered such a rule to be an unusual term of a residential lease. Ms. Leipold testified that she did hang a few items, including curtains, a pots and pans rack, a picture, and a mirror.

Ms. Leipold testified that Tenants patched the minimal number of holes created with spackle prior to vacating the property. Tenants submitted into evidence photographs of the areas patched by Tenants.[16]

---

[13] Pl. Ex. 4 at ¶ 13.
[14] Pl. Ex. 10.
[15] Pl. Ex. 4 at ¶ 14.
[16] Defs. Exhibits 2 through 10 are photographs of the Property. Ms. Leipold testified that Defs. Ex. 5 showed the walls where nail hole damage was made and subsequently patched by Tenants.

Ms. Hubbell-Kusami, on the other hand, testified that she did not give Tenants permission to hang items in the Property. Ms. Hubbell-Kusami testified that there were a total of 30 nail and screw holes in the property that required repair.

Mr. Frederique testified that he sanded, plastered, primed, and painted nail holes throughout the property. The documentary evidence submitted by Landlord shows that Mr. Frederique billed Landlord $150.00 for these repairs.[17]

The Court finds that, based on the testimony and the evidence the amount demanded here comes within what would be considered normal wear and tear; therefore, not subject to recovery,[18] because there is no indication the holes exceeded which was reasonable.

### 5. Repaint bathroom 2 door        $65.00

The Landlord Tenant Code identifies normal wear and tear to be damage that may "be corrected by painting and ordinary cleaning."[19] There is nothing in the record to suggest that the repainting of "bathroom 2 door" required more than mere painting. Thus, repainting of the door is not damage beyond normal wear and tear, and the Court finds that Landlord cannot recover for the costs associated therewith.

### 6. Replace damaged screen door    $81.99

No testimony identified the nature of the alleged damage to the screen door. It is the uncontroverted testimony of Ms. Leipold that the screen door was old and dirty when they moved into the property. The Court finds that Landlord has failed to

---

[17] Pl. Ex. 2.
[18] Def. Ex. 5.
[19] 25 Del. C. § 5514(c)(1).

prove, by a preponderance of the evidence, that the screen door sustained any damage and thus, Landlord is not entitled to recovery for the screen door.

### 7. Reinstall mailbox  $15.00

Mr. Frederique testified that he did not repair the mailbox. The invoice submitted by Mr. Frederique for the work performed at the property shows a charge of $0.00 for reinstalling the mailbox.[20] Landlord offered no further testimony in support of its position that it incurred damages in the amount of $15.00 for reinstallation of the mailbox. Accordingly, the Court finds no basis for an award of damages for reinstalling the mailbox.

### 8. Remove glue from window plastic and repaint  $630.00

Ms. Leipold testified that she used tape purchased from Home Depot to attach plastic to the windows as a means of keeping out cold air. Mr. Frederique likewise testified that some people tape the windows to keep cold air out. Mr. Frederique testified that he had to remove the tape and plastic from the window, then sand and paint the area with lead blocker paint.

Landlord failed to establish that the damage to the window plastic was beyond normal wear and tear. Mr. Frederique was familiar with the practice of taping the windows for climate control. It appears, based on the testimony presented, that such a practice is not uncommon or beyond the normal wear. To the extent that painting of the window plastic was required, such repair is precisely the type of normal wear and tear contemplated under the Landlord Tenant Code. Further, I fail to see a basis

---

[20] Pl. Ex. 2.

for recovery when the window was deficient in keeping cold air from entering the unit.

The Court finds that Landlord has failed to prove, by a preponderance of the evidence, that the damage to the window plastic exceeded normal wear. Accordingly, Landlord is not entitled to recover for damages thereto.

### 9. Remove glue from door plastic and repaint    $65.00

Ms. Leipold testified that tape to adhere the plastic to the door because it was cracked, however, there is no evidence how the door was damaged or when this occurred. Landlord failed to establish that the crack in the door is attributable to Tenants. Therefore, I find no basis to award this amount, and it is denied.

### 10. Repaint nail damaged wall    $75.00

To the extent that this request for damages includes the painting of certain areas set forth in item four, a second award for painting nail-damaged areas would constitute double recovery. To the extent that Landlord seeks to recover painting the entire wall, as opposed to the limited area where plaster was required, the Court finds that such damage constitutes normal wear and tear.

As set forth in the Landlord Tenant Code, damage that can be repaired by simply painting is considered normal wear and tear. Thus, the Court finds that Landlord is not entitled to recover for repainting of the wall.

### 11. Remove water stains on heater register covers and repaint  $195.00

Landlord seeks to recover for damage to three radiator covers. Mr. Frederique testified that the radiator covers bore marks from cups or plant pots,

which required sanding and repainting. Ms. Hubbell-Kusami testified that Tenants had placed a plant on one of the radiator covers in the living room. Ms. Leipold conceded that one plant was placed on a radiator cover, but she maintains that the only one plant was so placed. To the extent that this required sanding and repainting to address the stains on the radiator cover, it does not come within normal wear and tear.

The Court finds that Landlord proved by a preponderance of the evidence that the damage to the radiator covers is attributable to Tenants therefore the sum of $195.00 is awarded.

### 12. Repair dining room molding damage    $15.00

The testimony does not support that Tenants engaged in any activity which indicated they damaged the molding or that it was not damaged prior to their occupancy. The Court finds that Landlord failed to prove that Tenants caused any damage to the dining room molding beyond normal wear and tear. Accordingly, the Court awards no damages to Landlord for repair to the dining room molding.

### 13. Repair and repaint kitchen ceiling                $170.00

The testimony indicates Tenants installed a rack to hang pots and pans on the kitchen ceiling. This required the Landlord to repair the ceiling which is beyond normal wear and tear. Thus, the Court awards damages to Landlord for repair and repainting of the kitchen ceiling.

### 14. Repair hole in solid surface kitchen counter          $150.00

Ms. Hubbell-Kusami testified that, due to a hole that could not be repaired, a portion of the kitchen countertop had to be replaced. Ms. Leipold testified that the small hole in the kitchen counter existed prior to Tenants taking possession. However, Mr. Frederique, the general contractor testified he did work to the counter to correct an attempted repair which was not completed properly.

Thus, I find that the Landlord has proven damages by a preponderance of the evidence.

**15. Repair wall and floor damage from laundry room        $70.00**

The Court finds that Landlord failed to prove that any damage to the wall and floor of the laundry room, the testimony does not support that this exceeded normal wear and tear. Thus, Landlord cannot recover for the repair of the wall and floor of the laundry room.

**16. Repair second floor hall wall and repaint        $175.00**

There was no testimony presented at trial which suggests that there was damage to the walls of the second floor beyond that created by the nail holes as discussed in item four. To the extent that Landlord seeks to recover painting the entire wall, as opposed to the limited area where plaster was required, the Court finds that such damage constitutes normal wear and tear. Thus, the Court finds that Landlord is not entitled to recover for repainting of the second floor wall.

**17. Repair second floor hardwood floors    $1,900.00**
**        and**
**18. Repair staircase and landing        $790.00**

12

Mr. Henning testified that he was hired by Nationwide Insurance to provide an estimate for the cost of repairing the hardwood floors in the property. On March 28, 2011, Mr. Henning visited the property and recorded the damage observed therein. Mr. Henning testified that one of the tenants showed him the damage caused by furniture. Mr. Henning testified that he observed scratches in the wood on the second floor as well as dents in two stairs and in the hallway. Mr. Henning testified that other scratches were present throughout, which were the result of normal wear and tear.

On June 2, 2011, Mr. Henning repaired the hardwood floors, at a total cost of $2,690.00.[21] The area repaired exceeded the area actually damaged by Tenant's moving of furniture; three bedrooms, the stairs, and the landing were all sanded and refinished. Mr. Henning testified that typically, when one section of a floor requires repair, the entire area is re-done so that the flooring looks consistent throughout.

Mr. Henning testified that he worked on the first floor of the property roughly a year prior; however, he only did work on the first floor at that time. Mr. Henning testified that, although hired by Nationwide Insurance for the repair estimate, he was not paid by Nationwide Insurance.[22]

Ms. Leipold conceded that the delivery of furniture caused some scratches to the hardwood floors; however, she argues that the minimal damage caused by Tenants did not warrant redoing the entire second floor, stairs, and landing.

---

[21] Pl. Ex. 1.

[22] Pl. Ex. 1 shows a check was issued from the account of Robin Kusami to Hennings Hardwood Floors on June 14, 2011, in the amount of $2,690.00.

At the conclusion of the trial, the parties were ordered to submit supplemental briefing regarding the damage to the hardwood floors. The Court ordered the parties to address whether, "where there is damage to rental property and repair requires the landlord to enhance other areas, can a tenant can be held liable for the entire cost where the repair increases the value of the property."

In their written submissions, the parties concede there is no case law on point to address this issue. Tenants argue that to award Landlord the full cost of the repair would constitute unjust enrichment. Tenants maintain that the Court should offset any award to Landlord for refinishing the stairway, landing, and second floor of the property by the value of the refinishing job attributable to the undamaged bedrooms and the undamaged stairs. Landlord counters that the Tenants cannot establish the elements of unjust enrichment because they admittedly caused the damage to the floors thereby requiring the repairs. Landlord contends that it had not planned to repair the hardwood floors and, but for the acts of the Tenants, the repair work would not have been necessary.

Tenant's unjust enrichment argument is without merit. To prevail on an unjust enrichment theory, Tenants must prove the following elements: (1) an enrichment; (2) an impoverishment; (3) a relation between the enrichment and impoverishment; (4) the absence of justification; and (5) the absence of a remedy provided by law.[23]

---

[23] *Nemec,* 991 A.2d at 1129, *see Jackson Nat. Life Ins. Co. v. Kennedy*, 741 A.2d 377, 394 (Del. Ch. 1999).

The Court finds that there is sufficient justification because Tenants caused the underlying damage that required repair. Furthermore, a legal remedy exists in the form of damages as outlined in contract law. Due to the nature of the claim, an adequate legal remedy may be found in the form of damages based upon contract law. In contract law, "[o]ne who is injured by the breach of a contract is entitled to compensation for the injury received. The compensation should be such as will place him in the same position that he would have been in if the contract had been performed. The measure of damages is the loss actually sustained as a result of the breach of the contract."[24]

Tenants breached the contract by damaging the floors. But-for Tenants breach, repairs would not have been required. To return Landlord to the position it would have been in had the contract not been breached, refinishing the entire second floor, stairs, and landing was necessary. Thus, unjust enrichment does not apply, and Landlord is entitled to recover the damages incurred. The Court finds that Landlord may recover the full cost of repairs to the damaged floors in the amount of $2,690.00.

**19. Repair bathroom 2 cabinet doors and built-in base          $250.00**

Ms. Leipold testified that Tenants did remove the cabinet doors from the bathroom; however, she maintained that the doors were re-hung prior to leaving the property. Ms. Hubbell-Kusami testified that the cabinet doors in the bathroom were removed and not replaced.

---

[24] *J.J. White, Inc. v. Metropolitan Merchandise Mart*, 107 A.2d 892, 894 (Del. Super. 1954).

The Court finds that the testimony is sufficient to prove that Tenants caused any damage to the bathroom cabinet doors and base beyond normal wear and tear. Thus, Landlord is entitled to recovery to re-hang the doors, but the amount claimed is excessive and the sum of $50.00 is awarded.[25]

## CONCLUSION

For the foregoing reasons, the Court finds that Landlord is entitled to damages in the amount of $3,396.22. Pursuant to 25 *Del. C.* § 5511(c), damages are offset by the security deposit of $1,650.00[26] and rent credit of $462.00.[27] Therefore, judgment is entered for Landlord in the amount of $1,284.22, costs and post-judgment interest at 5.75% until paid. Each party shall bear its own costs.

**IT IS SO ORDERED this 30th day of April, 2014.**

_____

**Alex Smalls, Chief Judge.**

---

[25] To the extent that the cabinet doors were removed and not re-hung, which was likewise proven by a preponderance of evidence, the Court finds that the damages sought in relation thereto are reasonable.

[26] This figure represents the sum of the "pet deposit" of $400.00 and the "security deposit" of $1,250.00. Pl. Ex. 3 and Defs. Ex. 1.

[27] Pl. Ex. 3 and Defs. Ex. 1.